# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

PATRICK D. TRAMMELL,            )
                                )
        Plaintiff,          )
                                )
v.                              )     Case No. CIV-17-067-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
        Defendant.          )

## OPINION AND ORDER

Plaintiff Patrick D. Trammell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings consistent with this Opinion and Order.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 50 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a route sales representative and delivery driver. Claimant alleges an inability to work beginning April 25, 2012 due to limitations resulting from severe depression and anxiety disorder.

**Procedural History**

On May 2, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On April 15, 2013, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 11, 2015, Administrative Law Judge ("ALJ") Richard Kallsnick conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On August 19, 2015, the ALJ entered an unfavorable decision. The Appeals Council denied review on December 23, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical source evidence; (2) failing to perform a proper determination at steps four and five; and (3) failing to perform a proper credibility analysis.

**Evaluation of Medical Source Evidence**

In his decision, the ALJ found Claimant suffered from the severe impairments of anxiety disorder and depression. (Tr. 13). The ALJ determined Claimant retained the RFC to perform medium work except that Claimant was limited to simple tasks, related to co-workers and supervisors for work-related purposes, could not relate to the general public and should avoid any job which includes the general public, but could adapt to work situations. (Tr. 15).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of dishwasher, hand packager, hospital cleaner, marking clerk, and hotel housekeeper, all of which the ALJ concluded existed in sufficient numbers in both the regional and national economies. (Tr. 25-26). As a result, the ALJ concluded that Claimant was not under a disability from April 25, 2012 through the date of the decision. (Tr. 26).

Claimant contends the ALJ failed to properly evaluate the opinion of the consultative examiner and the non-examining consultative reviewers. The ALJ gave "great weight" to the opinions

5

of the consultative mental examiner, Dr. Theresa Horton. (Tr. 24). In her examination of Claimant, Dr. Horton found he drove to the appointment with his wife, appeared to be a reliable historian concerning his condition, complained of anxiety and depression, felt his condition interfered with his work, and became worse when he was off his medication. (Tr. 402). Claimant reported that he was able to provide for his personal hygiene but did not help around the house. He does not enjoy television or reading, does not use a computer or the internet, and spends his days "sitting around." While he saw relatives, he had no friends and attended no groups, clubs, or church. He indicated that he was slow to get things started and finished and lacked motivation to initiate tasks. (Tr. 402-03).

Dr. Horton observed that Claimant was dressed and groomed appropriately, made appropriate eye contact, had normal speech, had a friendly attitude and appropriate cooperation, walked without assistance, sat comfortably, did not present excessive motor movement, appeared genuine, calm and euthymic, appeared in no distress, and appeared to have spent time in the sun recently. (Tr. 403). Claimant's thought processes were logical, organized, and goal directed. He stated that he attempted suicide twice but was treated and released. He had no other unusual though content. He had not hallucinations or paranoid thoughts. His mood was

6

predominantly described as depressed and lacking motivation with intermittent anxiety and avoidance of large crowds. His affect was content congruent and expressive. Claimant was oriented to person, place, time, and situation. His recall memory appeared intact. His concentration was adequate. He had an adequate fund of information and was of average intelligence. Claimant's recall and number exercises were appropriate. When offered scenarios, Claimant presented with appropriate judgment, but his insight was poor. Dr. Horton believed Claimant was capable of managing benefits. (Tr. 404).

As far as non-examining consultative professionals are concerned, Claimant's records were reviewed by Dr. Pamela G. Davis, a psychologist and "JLK" who was coded as a psychologist. These reviewing professionals reached similar if not identical conclusions on Claimant's RFC. They determined Claimant could complete simple and complex types of tasks. However, during times of stress, the ability to attend to detail and sustain average pace would likely decline. The reviewers found Claimant would not be well suited to deal with the public on more than a superficial basis. He could adapt to a work situation. (Tr. 61, 71, 84, 95). Claimant appears to contend that the ALJ did not engage in a formulaic examination of the factors set forth in <u>Watkins v. Barnhart</u>, 350

F.3d 1297, 1300-01 (10th Cir. 2003). However, many of these factors have very little application to the opinion of a reviewing physician such as length of treatment relationship, nature and extent of treatment relationship, and testing performed. This is precisely the basis for the conclusion that

> it is not necessary for the ALJ to address each factor expressly or at length . . . . As long as the ALJ provides "good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]" . . . What matters is that the decision is "sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight."
> Mounts v. Astrue, 479 Fed.Appx. 860, 8665 (10th Cir. 2012) quoting Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ made detailed findings concerning the medical evidence and concluded that the objective medical record supported his decision to give Dr. Horton and the reviewers' opinions "great weight." Support from the medical record is the primary factor in deciding the weight of reviewer's consultative opinions as few of the other factors are germane. No error is found in the ALJ's consideration of this opinion evidence.

Claimant also contends the ALJ misidentified his treating physician by name. This appears to be accurate. The ALJ, however, confused the issue by referring to Dr. Malini and his records in reaching his conclusions, citing to Exhibits 3F and 7F, which are,

8

in fact, Dr. Malini's records. (Tr. 24). Claimant's treating physician, Dr. Shahram Zandi Hanjari's records are referenced earlier in the opinion but not when the conclusion is reached as to the weight given to the opinion. The ALJ is not only required to consider whether a treating physician's opinion is entitled to controlling weight, but also to determine the reduced weight to which it is entitled. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). More disturbing, however, is the conclusion that the opinion is not consistent with the objective medical evidence, "but moreso on the subjective complaints made by the claimant." (Tr. 24). This conclusion stands without objective support in the record and appears to form the primary basis for rejecting the treating physician's opinion. *See* Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004)("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)). On remand, the ALJ shall make clear which physician's opinion is being evaluated and engage in a proper analysis as to the weight to which the opinion is entitled.

**Step Four and Five Determination**

Claimant also contends the ALJ failed to include many of the limitations found by the reviewing psychologists in the RFC. Primarily, Claimant asserts the ALJ should have included a restriction in Claimant's ability to attend to detail and sustain average pace in times of stress in the RFC and questioning of the vocational expert. Claimant also states the ALJ should have included the other restrictions found in Section I of the MRFCA.

"The purpose of section I . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation. . . . It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC." POMS DI 25020.010 B.1.; see also POMS DI 24510.060 B.4.a. (stating that "Section III . . . is for recording the mental RFC determination [and where] . . . the actual mental RFC assessment is recorded"); POMS DI 24510.065 A. (substantially the same). The ALJ included more restrictive findings on Claimant's interaction with the public than that found by the reviewers. Defendant contends the findings of declining pace and attention to detail under stress is not stated in vocational terms and, therefore, cannot be included in the RFC.

Pace is a frequently addressed vocational requirement. On remand, the ALJ shall consider any restriction to low stress jobs or the effect of stress upon pace in his RFC evaluation.

**Credibility Determination**

Claimant challenges the ALJ's credibility findings. This Court is concerned in particular with the conclusion that

> The description of the symptoms and limitations, which the claimant has provided throughout the record, has generally ben inconsistent and unpersuasive and the claimant has not provided convincing details regarding factors that precipitate the allegedly disabling symptoms. The undersigned finds that, in consideration of all medical evidence, there appears to be some inconsistency regarding functional limitations and allegations, yielding to a partial allegation of credibility assumption.

(Tr. 24).

Initially, this Court is uncertain as to the precise meaning of this statement by the ALJ. More importantly, the ALJ fails to explain this conclusion and the evidentiary basis for reaching it. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

11

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ's conclusions on credibility are unclear and unsupported. The ALJ shall re-evaluate Claimant's statements on credibility, without engaging in speculation, on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of

Social Security Administration should be and is **REVERSED and the case is REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 21st day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE